**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RHONDA PROCTOR, et al.,<br><br>Plaintiffs,<br><br>v.<br>CÍRCULO CUBANO DE PUERTO RICO, INC., et al.,<br><br>Defendants. | **Civil. No. 24-1294 (GMM)** |

**OPINION AND ORDER**

Before the Court is *Codefendant's Círculo Cubano de Puerto Rico, Motion for Summary Judgment* ("*Motion for Summary Judgment*"). (Docket No. 49). For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the *Motion for Summary Judgment*.

## I. BACKGROUND

This civil action, under diversity jurisdiction, arises from a wrongful death and personal injury brought by Plaintiffs Rhonda Proctor ("Mrs. Proctor"), mother of Tommy Lee Grays, III ("Tommy"), on her own behalf and as administrator of Tommy's estate; Tommy Lee Grays, II, father of Tommy, on his own behalf and as administrator of Tommy's estate; Aaron Proctor ("Mr. Proctor"), uncle of Tommy and brother of Rhonda Proctor, on his own behalf; and Maurice Gaines ("Mr. Gaines"), boyfriend of Tommy's mother, on his own behalf (collectively, "Plaintiffs"). *See generally* (Docket Nos. 5; 57).

Plaintiffs allege that Mr. Carlos Aníbal Rosado-Martínez ("Mr. Rosado"), an employee of Defendant Círculo Cubano de Puerto Rico, Inc. ("Casa Cuba" or "Defendant"), became involved in an argument and physical altercation with Mr. Proctor and that Mr. Rosado discharged a firearm several times. (Docket No. 5 at 5-6 ¶¶ 17-21). As a result of the shooting, Tommy, who was a minor at the time of the incident, was fatally shot. (Id. at 6-7 ¶¶ 22, 26). Mr. Proctor and Mr. Gaines sustained bodily injuries. (Id. at 6, 8 ¶¶ 23, 29-30).

Plaintiffs posit that the incident occurred in an area of the Isla Verde beach where Casa Cuba owed a duty of care and failed to uphold it. (Id. at 9-11 ¶¶ 31-41). They seek damages in excess of $3,250,000. (Id. at 7-8 ¶¶ 25-30). Namely, Plaintiffs claim that Casa Cuba's acts and omissions render it liable for negligence under Articles 1536 and 1538 of the 2020 Puerto Rico Civil Code, premised upon theories of: negligent hiring, supervision, and training of Mr. Rosado and security personnel; failure to adopt a firearm prohibition for its employees; and failure to implement proper security mechanisms. (Id. at 9-12 ¶¶ 31-42, 44-45).

After discovery concluded, Casa Cuba moved for summary judgment, arguing that "there is no controversy of facts" and that

"neither direct nor vicarious liability is present in this action and, thus[,] dismissal follows." [1] (Docket No. 49 at 2).

Casa Cuba principally contends that Plaintiffs were neither Casa Cuba's guests nor did they request any service from Casa Cuba, and that the incident in controversy happened in a public beach area which is not under its control. (Id. at 1, 4, 8, 11). Defendant argues that no duty of care has been imposed upon Casa Cuba by statute, regulation, or contract that would possibly render Casa Cuba liable for negligence. (Id. at 8-10). To that extent, Casa Cuba posits that: it had several security guards on duty on its premises that day; it enforces a regulation that forbids the carrying of firearms on its premises; and the intentional acts of Mr. Rosado did not benefit Casa Cuba and were not foreseeable - thus, no liability should attach. (Id. at 12).

Plaintiffs oppose the *Motion for Summary Judgment*, arguing that "there [are] genuine disputes of material facts concerning Casa Cuba, its failure to act and the duty of care it owed to plaintiffs, and thus, whether Casa Cuba's negligence was an adequate cause of plaintiffs' damages." (Docket No. 57 at 2); *see also* (Docket No. 74 at 18).

[1] Defendants Cooperativa de Seguros Múltiples de Puerto Rico and Liberty Mutual Insurance Company joined Casa Cuba's motion for summary judgment. (Docket Nos. 50-53).

The parties have submitted - and the Court has carefully examined – the proposed uncontested facts, memoranda of law, translated exhibits, replies, and surreplies. (Docket Nos. 49; 57; 58; 69; 74). This matter is now fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 56

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party"; a fact is material if it "has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (*quoting* Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)). If the Court finds that a genuine factual dispute remains, the resolution of which could affect the outcome of the case, summary judgment must be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of evidence supporting the nonmoving party's case.

Celotex, 477 U.S. at 323, 325. "The burden then shifts to the nonmovants to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (citation modified). In considering a motion for summary judgment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

B. Local Civil Rule 56

Motions for summary judgment are also governed by Local Civil Rule 56. L.Cv.R. 56; *see also* López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023). Local Rule 56 mandates that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L.Cv.R. 56(b). That rule also demands that the party opposing the movant's motion must submit "with its opposition a separate, short, and concise statement of material facts" which "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. 56(c). "Unless a fact is admitted, the

opposing statement shall support each denial or qualification by a record citation." Id. If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the Court may "disregard" the unsupported statement. Id. 56(e).

Where a supported fact is not properly controverted, it "shall be deemed admitted." Id.; Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 8 (1st Cir. 2025). The Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L.Cv.R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." López-Hernández, 64 F.4th at 26. Litigants ignore the anti-ferret rule at their peril. Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate, "through submissions of evidentiary quality, that a trial[-]worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

## III. UNCONTESTED FACTS[2]

After thorough review, the Court draws from the record the following material facts which are not in genuine dispute or properly controverted in compliance with Local Civil Rule 56. CMI Cap. Mkt. Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008).

1. Casa Cuba is a nonprofit organization that serves as a membership-based social club. It is organized under the laws of Puerto Rico and authorized to operate by the Puerto Rico Department of State. (Docket Nos. 49 at 3 ¶¶ 1, 3; 49-1 at 1 ¶¶ 1, 3; 49-3 at 3; 57 at 5 ¶¶ 1, 3; 58 at 1-2 ¶¶ 1, 3).

2. Casa Cuba is located on the corner of Gardenia Street and Violeta Street in Urbanization Biascochea, Carolina, Puerto Rico. (Docket Nos. 57-5 at 3; 58 at 8 ¶ 9; 69).

3. Casa Cuba operates in a beachfront property adjacent to the Isla Verde public beach. (Docket Nos. 49 at 3-4 ¶¶ 4-5; 49-1 at 1-2 ¶¶ 4-5; 57 at 6 ¶¶ 4-5; 58 at 2 ¶¶ 4-5).

4. Casa Cuba provides beach chairs and umbrellas to its members, free of charge, during weekends and holidays. These chairs and umbrellas are placed in the area of the Isla Verde beach that is adjacent to the Casa Cuba property. (Docket Nos. 49 at 4 ¶ 6; 49-1 at 2 ¶ 6; 57 at 7 ¶ 6; 58 at 2 ¶ 6; 64-1).

---

[2] Casa Cuba in its *Reply* asks for the Court to strike Ms. Proctor's affidavit testimony from the record "for it consists of a so-called sham affidavit done in an *ex post facto* fashion after the witness have been fully questioned in the deposition." (Docket No. 69 at 4). Plaintiffs argue in their *Surreply* that Ms. Proctor's testimony, as found in her *Statement Under Penalty of Perjury*, does not contradict her deposition testimony and merely provides more detail of her account. (Docket No. 74 at 9-10; 57-8). Separately, Casa Cuba also asks to strike "Fact. 5" as identified in its *Reply* filing, arguing that it is conclusory. (Docket No. 69-1 at 2). As the Court did not rely on Ms. Proctor's affidavit testimony and only on facts both uncontested and supported by the record, the consideration of the issues is not pertinent and the requests are moot.

5. Members of Casa Cuba select where within the Isla Verde beach to place the chairs and umbrellas provided by Casa Cuba. (Docket Nos. 49 at 4 ¶ 10; 49-1 at 2 ¶ 10; 57 at 7 ¶ 10; 58 at 3 ¶ 10).

6. In May 2023, Mr. Rosado was hired by Casa Cuba as a part-time employee to work on weekends and holidays. (Docket Nos. 49 at 4 ¶ 8; 49-1 at 2 ¶ 8; 49-3 at 4; 57 at 6 ¶ 8; 57-2 at 7; 58 at 2-3 ¶ 8).

7. Mr. Rosado was hired to provide service to Casa Cuba members in the area of the Isla Verde beach that is adjacent to the Casa Cuba property. (Docket Nos. 49 at 4 ¶ 8; 49-1 at 2 ¶ 8; 49-3 at 4; 57 at 6 ¶ 8; 57-2 at 7; 58 at 2-3 ¶ 8).

8. The beach service at Casa Cuba consisted of: (1) keeping equipment, i.e., beach chairs and umbrellas, clean and organized; (2) making sure that only club members in the member list provided had access to equipment; (3) keeping record of equipment in use; and (4) ensuring that members did not remove equipment without prior authorization. (Docket Nos. 49-3 at 4; 57 at 6 ¶ 8; 58 at 2-3 ¶ 8; 64-1).

9. Mrs. Paloma de Haro ("Mrs. de Haro") was Mr. Rosado's supervisor. (Docket Nos. 49 at 4 ¶ 9; 49-1 at 2 ¶ 9; 57 at 6-7 ¶ 9; 58 at 3 ¶ 9).

10. Plaintiffs Ms. Proctor, Mr. Proctor, and Mr. Gaines traveled to Puerto Rico on June 30, 2023, along with non-plaintiffs Tommy, Mrs. Tyra White ("Mrs. White"), and Ms. Amani Leah Grays ("Ms. Grays") (collectively, "Proctor family" or the "Proctors"). (Docket Nos. 49 at 5 ¶ 13; 49-1 at 3 ¶ 13; 57 at 7 ¶ 13; 58 at 4 ¶ 13).

11. On July 1, 2023, the Proctor family went to the Isla Verde beach and visited the area adjacent to the Casa Cuba property. (Docket Nos. 49 at 5 ¶ 14; 49-1 at 3 ¶ 14; 57 at 7-8 ¶ 14; 58 at 4 ¶ 14).

12. That same day, Mr. Rosado was working at Casa Cuba. (Docket Nos. 57 at 12 ¶ 18; 57-2 at 12; 58 at 9 ¶ 19).

13. The Proctor family did not request or receive any of Casa Cuba's services. They neither rented beach equipment nor bought any food or drinks. (Docket Nos. 49 at 5 ¶ 16, 7 ¶ 32; 49-1 at 3 ¶ 16, 4 ¶ 32; 57 at 8 ¶ 16, 10 ¶ 32; 58 at 4 ¶ 16, 6 ¶ 32).

14. While at the Isla Verde beach on July 1, 2023, Mr. Proctor was approaching women, looking to obtain their telephone numbers. (Docket Nos. 49 at 5 ¶ 17, 6 ¶ 25; 49-1 at 3 ¶ 17, 4 ¶ 25; 57 at 8 ¶ 17, 9 ¶ 25; 58 at 4 ¶ 17, 5 ¶ 25).

15. Mr. Proctor saw a woman by herself, whom he then approached and greeted. (Docket Nos. 49 at 6 ¶ 26; 49-1 at 4 ¶ 26; 57 at 9 ¶ 26; 58 at 5 ¶ 26).

16. Suddenly, Mr. Proctor, without warning, was struck by Mr. Rosado and fell to the ground. Mr. Proctor got back to his feet and argued with Mr. Rosado. (Docket Nos. 49 at 5 ¶ 18, 6 ¶¶ 26-27; 49-1 at 3 ¶ 18, 4 ¶¶ 26-27; 57 at 8 ¶ 18, 9 ¶ 26–27; 58 at 4 ¶ 18, 5-6 ¶¶ 26-27).

17. Mr. Rosado began running towards Casa Cuba. (Docket Nos. 49 at 5 ¶ 19, 6 ¶ 27; 49-1 at 3 ¶ 19, 4 ¶ 27; 57 at 8 ¶ 19, 9 ¶ 27; 58 at 4 ¶ 19, 5-6 ¶ 27).

18. Mr. Proctor, along with other family members, chased Mr. Rosado inside Casa Cuba, where Mr. Rosado threw a chair at Mr. Proctor during the pursuit. (Docket Nos. 49 at 6 ¶ 27; 49-1 at 4 ¶ 27; 57 at 8 ¶ 19, 9 ¶ 27; and 58 at 4 ¶ 19, 5-6 ¶ 27).

19. The pursuit continued until Mr. Rosado left through the right exit of Casa Cuba towards the Isla Verde beach. (Docket Nos. 49 at 6 ¶ 27; 49-1 at 4 ¶ 27; 57 at 9 ¶ 27; 58 at 5-6 ¶ 27).

20. Mr. Proctor returned to the beach and began arguing with the woman he approached before being struck by Mr. Rosado. (Docket Nos. 49 at 6 ¶¶ 28-29; 49-1 at 4 ¶¶ 28-29; 57 at 9-10 ¶¶ 28-29; 58 at 6 ¶¶ 28-29).

21. During the altercation between Mr. Proctor and the woman, Mr. Rosado returned to the area with a

firearm. (Docket Nos. 49 at 6 ¶ 29; 49-1 at 4 ¶ 29; 57 at 10 ¶ 29; 58 at 6 ¶ 29).

22. Mr. Rosado discharged the firearm several times, injuring Mr. Proctor and Mr. Gaines, and fatally wounding Tommy. (Docket Nos. 49 at 1, 6-7 ¶¶ 29-30; 49-1 at 4 ¶¶ 29-30; 57 at 10 ¶¶ 29-30; 58 at 6 ¶¶ 29-30).

23. Neither Ms. Proctor, Mrs. White, nor Ms. Grays witnessed the shooting. (Docket Nos. 49 at 6 ¶ 22; 49-1 at 3 ¶ 22; 57 at 8 ¶ 22; 58 at 5 ¶ 22).

24. Mr. Proctor did not see where Mr. Rosado got the gun. (Docket Nos. 49 at 7 ¶ 35; 49-1 at 5 ¶ 35; 57 at 10 ¶ 35; 58 at 6 ¶ 35).

25. Casa Cuba retained third-party security services from Cruceta Security Inc. at the time of the incident. (Docket Nos. 49 at 4 ¶ 11; 49-1 at 2 ¶ 11; 49-3 at 5; 57 at 7 ¶ 11; 58 at 3 ¶ 11).

26. On July 2, 2023, Harry Rivera Ortiz ("Mr. Rivera") and Ricardo Álvarez González ("Mr. Álvarez"), Cruceta Security Inc. guards, subsequently gave sworn statements about the event. (Docket Nos. 49-3 at 5; 49-9 at 3-4, 7-8; 57 at 12 ¶ 19; 58 at 9 ¶ 24).

27. Mr. Rivera and Mr. Álvarez were present at Casa Cuba at the time of the events and have knowledge of the encounter. (Docket Nos. 49-3 at 5, 7-8; 49-9 at 3-4, 7-8; 57 at 12 ¶ 19; 58 at 9 ¶ 24).

28. On July 2, 2023, Bernarda Rosario Martínez ("Mrs. Rosario"), a Casa Cuba employee, subsequently gave a sworn statement about the event. (Docket No. 49-3 at 6; 49-9 at 5-6; 57 at 13 ¶ 20; 58 at 9 ¶ 21).

29. Mrs. Rosario stated that she was present at the time of the events and was on duty. (Docket Nos. 49-3 at 6; 57 at 13 ¶ 20; 58 at 9 ¶ 21).

30. Article 133 of Casa Cuba's Regulation provides that "[i]t is prohibited to enter the Club carrying

weapons or animals, with the exception of guide dogs for the blind". (Docket Nos. 49 at 4 ¶ 7; 49-1 at 2 ¶ 7; 49-4 at 3; 57 at 6 ¶ 7; 58 at 2 ¶ 7). In discovery, Casa Cuba identified Article 133 as its policy regarding the possession or use of firearms on its premises. (Docket No. 49-3 at 5).

31. Mr. Rosado was criminally convicted in Commonwealth court on May 21, 2024, for his conduct on July 1, 2023. (Docket Nos. 49 at 7 ¶ 36; 49-1 at 5 ¶ 36; 49-9 at 2; 57 at 10 ¶ 36; 58 at 7 ¶ 36).

## IV. APPLICABLE LAW AND ANALYSIS

### A. Negligence

Plaintiffs sue for negligence, pursuant to a theory of wrongful death. "Because this is a diversity case, we apply Puerto Rico's substantive law." Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020). Puerto Rico's general tort statute, Article 1536 of the Puerto Rico Civil Code, establishes that a person is liable for the harms inflicted on others through fault or negligence.[3] P.R. Laws Ann. tit. 31, § 10801. This is understood as direct liability. *See* Ortiz v. Sucesión de Serrallés, 89 P.R. Dec. 419, 424 (P.R. 1963); Birriel Colón v. Supermercado Los Colobos, 213 P.R. Dec. 80, 94 (P.R. 2023). Damages are awarded

[3] Article 1536 is codified in the Puerto Rico Civil Code of 2020, which has yet to be officially translated to English. González Villegas v. Doctors' Ctr. Hosp., No. 21-CV-1592-GMM, 2025 WL 949471, at *6 n.3 (D.P.R. Mar. 28, 2025). It replaces the prior Article 1802 of the Puerto Rico Civil Code of 1930. Id. at *6. Article 1536 contains the same elements as its predecessor. Id. Caselaw analyzing Article 1802 remains in effect and shall be applied to actions brought under Article 1536. Id.

under Article 1538 if liability is found. P.R. Laws Ann. tit. 31, § 10803.

Notably, in this case, the *Amended Complaint* does not invoke Article 1540 or allege that Mr. Rosado acted within the scope of his employment. Even assuming that theory is properly before the Court, the record does not support it for the reasons explained in footnote 4. Plaintiffs' direct-negligence claims arise out of a shooting incident in an area of the beach adjacent to Casa Cuba. *See generally* (Docket No. 5).[4] This shooting was carried out by a Casa Cuba employee — Mr. Rosado — and the incident resulted in Tommy's death, as well as injuries upon other members of the

---

[4] Plaintiffs only bring up vicarious liability only in response to Casa Cuba's *Motion for Summary Judgment*. (Docket Nos. 57 at 15, 17-18, 21-22; 74 at 13-15). Even assuming that a vicarious-liability theory is properly before the Court, it fails on this record. That conclusion does not dispose of the negligent hiring, training, and supervision theories, which concern Casa Cuba's own conduct and are analyzed separately under Article 1536.

Under Puerto Rico law, Plaintiffs must show that Mr. Rosado was acting within the scope of his employment with Casa Cuba to prevail on any vicarious liability claim. P.R. Laws Ann. tit. 31, § 10805; Vizcarrondo-González v. Vilsack, 2024 WL 3221162, *10 (1st Cir. June 28, 2024). Courts making a scope of employment determination under Puerto Rico law consider: "(1) whether the employee's action showed a desire to serve, benefit, or further his employer's interest; (2) whether he was prompted purely by personal motives; and (3) whether his action was reasonably related to the scope of his employment." Vizcarrondo-González, 2024 WL 3221162 at *10 (citation modified). So long as the conduct is "reasonably related to the scope of the employment," the act will be deemed within scope. Attallah v. United States, 955 F.2d 776, 781 (1st Cir. 1992). Even intentional criminal acts can be within scope if there is some link to the legitimate interests of the employer. Id. at 781-782. Should the employee be motivated, at least in part, with the purpose of serving his employer, the conduct will be deemed within scope. Id. at 781. The relevant question is whether the conduct was reasonably related to Mr. Rosado's employment and motivated, at least in part, by a purpose to serve Casa Cuba. His presence at work does not, by itself, establish that connection, nor the alleged inexistence of a no-firearms policy. On that evidentiary basis, a reasonable jury could not find that Mr. Rosado acted within the scope of his employment.

Proctor family. According to Plaintiffs' theory of liability, Casa Cuba was directly negligent because: (1) it failed to adequately hire, train, and supervise a combination of Mr. Rosado and security personnel; and (2) it failed to provide and enforce adequate security measures inside and outside of Casa Cuba. (Id. at 9-11 ¶¶ 31-40).

As such, the Court confines its analysis to theories of direct liability only. "Negligence under Article [1536] is generally defined as the failure to exercise due diligence to avoid foreseeable risks." Baum-Holland, 964 F.3d at 87 (citation modified). To prevail on a negligence action, Plaintiffs "must establish: (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Id. (citation modified).

The Court first addresses Plaintiffs' claims premised upon Casa Cuba's alleged negligent hiring, training, and supervision of Mr. Rosado.

1. Plaintiffs' Negligence Claims Regarding Negligent Hiring, Training, and Supervision

The occurrence of injury is not disputed: the shooting fatally wounded Tommy and injured Mr. Proctor and Mr. Gaines. The disputed issues concern Casa Cuba's duty, breach, and causal responsibility.

Accordingly, the Court must examine if the other essential elements are met, as it is settled law that the mere occurrence of an injury, without more, does not warrant an inference that a defendant was negligent or that its negligence was the proximate cause of the plaintiff's injury. *See* Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 53 (1st Cir. 2007).

"Rule 56 requires a party moving for summary judgment or opposing another party's motion for summary judgment to cite specific facts in the record to support [t]he[i]r assertions; it also permits a court to grant summary judgment in the absence of such evidence." Roberge v. Travelers Prop. Cas. Co. of Am., No. 24-1040, 2026 WL 2676279, at *5 (1st Cir. Sept. 11, 2026). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The Court recognizes the gravity of the underlying event that resulted in Tommy's death. The record, however, must be examined in accordance with the law as to the liability of Casa Cuba, because Plaintiffs have elected to proceed against Casa Cuba on theories of direct negligence — specifically negligent hiring,

training, and supervision claims. The question therefore is not simply whether Mr. Rosado's conduct caused Tommy's death. It plainly did. The question is whether the summary judgment record contains evidence that Casa Cuba itself breached a duty of care in a manner that proximately caused that death because of their negligent hiring, training, and supervision of Mr. Rosado. The Court finds that it did not.

As to their negligent hiring, training, and supervision claims, Plaintiffs must identify evidence from which a reasonable trier of fact could find the existence of a duty of care, a breach of that duty, and a causal connection to their injuries. Plaintiffs have simply not complied with the burden imposed by Rule 56(c). For example, Plaintiffs have failed to put forth any evidence that: (1) Casa Cuba knew or should have known that Mr. Rosado possessed a firearm; (2) Casa Cuba knew that Mr. Rosado had previously engaged in violent, threatening, or aggressive conduct; (3) Mr. Rosado had previously threatened or assaulted anyone; (4) Mr. Rosado had previously violated a firearm-related workplace rule; (5) Casa Cuba had received complaints concerning Mr. Rosado's propensity for violence; (6) a particular training program was required but not provided; (7) a particular form of supervision was required but not provided; or (8) a particular hiring mechanism was required for Mr. Rosado's job description.

To the contrary, Casa Cuba's *Answers to First Set of Interrogatories* state that Mr. Rosado had no disciplinary record, history of violent behavior, or prior complaints, and that Casa Cuba had no prior knowledge that he had access to or carried a firearm. (Docket Nos. 49-3 at 4-5; 49-11 at 2). Casa Cuba does acknowledge that it did not conduct a criminal background check, psychological evaluation, or drug test before hiring Mr. Rosado, and that it has no written hiring procedures. (Docket No. 49-3 at 5-6). But Plaintiffs point to no evidence that any such screening would have revealed anything bearing on a risk of violence. Plaintiffs also stress that Mr. Rosado's training consisted of a conversation about his tasks and a one-page instruction sheet, and that he received no protocol for dealing with non-members who approached the beach area. (Docket Nos. 57 at 22-25; 57-2 at 9; 64-1). But Plaintiffs identify no evidence of what training a reasonable employer in Casa Cuba's position would have provided to a beach-chair attendant, or that any such training would have prevented an unprovoked assault and Mr. Rosado's armed return.

Plaintiffs instead rely upon the occurrence of the shooting and ultimate death, the alleged absence of a written employee firearm policy, and the fact that Mr. Rosado was an employee of Casa Cuba. In addition, Plaintiffs try to create a factual dispute regarding Mr. Rosado's disciplinary history pointing to text

messages sent by his supervisor. As to this, Plaintiffs rely heavily upon a warning concerning Mr. Rosado's girlfriend's use of the beach chairs. (Docket Nos. 57 at 12 ¶¶ 12-13; 58 at 8 ¶¶ 13-14; 64-2 at 1). Even accepting Plaintiffs' characterization of that communication, the evidence establishes at most that Casa Cuba had instructed Mr. Rosado concerning his girlfriend's use of chairs reserved for members. Indeed, in the same exchange, his supervisor told him, "You're doing a very good job but you must separate personal matters from your responsibilities, that is all." (Docket No. 64-2 at 2). The fact is that Plaintiffs have presented no evidence connecting that instruction to violence, firearms, threats, or any anticipated confrontation with members of the public. Again, the record contains no evidence of prior criminal, violent or aggressive conduct, firearm-related misconduct, threats, or similar incidents involving Mr. Rosado. Nor is there evidence that Casa Cuba knew or should have known that Mr. Rosado posed a risk of armed violence, or even violence in general.

Thus, this factual dispute is not material because Plaintiffs have not produced evidence from which a reasonable jury could infer that Casa Cuba's knowledge that Mr. Rosado's girlfriend was using the chairs made the subsequent armed confrontation reasonably foreseeable, or that additional supervision, training, or hiring

measures would have prevented the shooting. To allow the claim to proceed on this record, the jury would have to impermissibly infer that because the shooting occurred, some unidentified training, supervision, or hiring measures must have prevented it.

In sum, after discovery, Plaintiffs have not identified evidence sufficient to permit a reasonable jury to find that a deficiency in Casa Cuba's hiring, training, or supervision practices preceding the July 1 altercation proximately caused their injuries. Summary judgment is therefore warranted on those theories, which are **DISMISSED WITH PREJUDICE.**[5]

The Court now proceeds to examine Plaintiffs' inadequate security measures claim.

2. Plaintiffs' Negligence Claims Regarding Inadequate Security Measures

As previously stated, it is undisputed that Plaintiffs meet the third element of their negligence claim. Now to the remaining elements.[6]

a. Duty of Care

The first element - a duty requiring the defendant to conform to a certain standard of conduct - is commonly known as a "duty

[5] This ruling does not resolve the separate theory that Casa Cuba failed to respond reasonably to the altercation as it unfolded, which the Court addresses below.

[6] The Court does not decide whether the security measures were in fact inadequate, nor does it assess which version of the events is more credible. It holds only that the record contains sufficient evidence for a reasonable jury to find either way on the adequacy of Casa Cuba's security measures and on whether any inadequacy was an adequate cause of Plaintiffs' damages.

of care." It refers to an "obligation to anticipate and take measures against a danger that is reasonably foreseeable." Woods-Leber v. Hyatt Hotels of P.R., Inc., 951 F. Supp. 1028, 1036 (D.P.R. 1996), aff'd, 124 F.3d 47 (1st Cir. 1997). As the First Circuit has explained, and recently reiterated, "[t]o prevail on a negligence claim under Puerto Rico law, a plaintiff must first establish that the defendant owed him or her a duty of care." Wilson v. Iguana Sport Servs., Corp., 182 F.4th 43, 54 (1st Cir. 2026) (*citing* Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 547 (1st Cir. 2019)).

This duty of care may arise: (1) by statute or regulation; (2) a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation. De Jesús-Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998). Identifying a duty is typically a legal question for the court. Candelario Del Moral v. UBS Fin. Servs. Inc. of P.R., 699 F.3d 93, 100 (1st Cir. 2012).

No readily identifiable statute or regulation exists that would impose a duty of care on Casa Cuba as to the events alleged by Plaintiffs. Hence, the Court examines the remaining sources of duties of care. Casa Cuba argues that no special relationship existed between the parties because the Proctors were not guests

of Casa Cuba. (Docket No. 49 at 8). Without any special relationship, Casa Cuba asserts that no other duty exists nor were the events reasonably foreseeable even if a duty existed. (Id. at 9-14). Plaintiffs, in turn, aver that Casa Cuba "set up a for-profit activity in the beach areas" and thereby exerted sufficient control over the beach in its operation that created a duty. (Docket Nos. 5 at 9 ¶ 32; 57 at 1-2). As to its operation, Casa Cuba appears to concede that it is a commercial establishment. *See* (Docket No. 49 at 9) (*citing* Colón-García v. Toys "R" Us, Inc., 139 P.R. Dec. 469, 473 (P.R. 1995)) (regarding the standard applicable to commercial establishments).

i. Casa Cuba's Duty of Care as to Security

First, although there is no general duty to protect other people from the criminal acts of third parties, Puerto Rico case law has recognized that certain activities entail a special duty of care. The Puerto Rico Supreme Court has identified schools, hospitals, and hotels as entities that, given the "essential nature" of the activities they perform, must be held to a heightened standard of care. Elba A.B.M. v. Univ. of P.R., 125 P.R. Dec. 294, 308, 320 (P.R. 1990). Hotels and innkeepers, though not "absolute insurers of their guests' well-being, . . . must ensure that the areas to which [their] guests have access are safe." Blomquist, 925 F.3d at 547 (internal citations omitted).

As the First Circuit recognized in Wilson, "[b]esides schools, hospitals, and hotels, the Puerto Rico Supreme Court has not named other entities or institutions subject to a heightened standard of care" and "seems to have left open the possibility that other entities may also be held to a stringent standard of care, dependent on the nature of the activities they undertake." Wilson, 182 F.4th at 54-55.

Pertinent here, the Puerto Rico Supreme Court has also recognized that "the owner or operator of a commercial establishment has a duty to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons." Márquez v. Casa de España de P.R., 59 F. Supp. 3d 409, 414 (D.P.R. 2014) (*quoting* Cline v. P.R. Ports Auth., 620 F. Supp. 2d 233, 237 (D.P.R. 2008)); *see also* Cotto v. Consol. Mutual Ins. Co., 16 P.R. Offic. Trans. 786, 793 (P.R. 1985) (holding that a person or company that "runs a business for profit" has a duty to exercise reasonable care to ensure that business premises are safe for "business visitors"); Colón-García v. Toys "R" Us, Inc., 139 P.R. Dec. 469, 473 (P.R. 1995) (holding that the owner of a business open to the public is not an insurer of its patrons' safety but must exercise reasonable care for their protection).

Additionally, the Puerto Rico Supreme Court has established in several cases that certain types of institutions have a duty to protect certain persons from attacks by third parties. *See, e.g.*, Tormos-Arroyo v. Dep't of Educ. of P.R., 140 P.R. Dec. 265, 271, 275-76 (P.R. 1996) (public junior high school's duty to protect students from criminal activity); Montalbán v. Plaza Carolina Shopping Ctr., 132 P.R. Dec. 785, 801 (P.R. 1993) (shopping mall's duty to protect patrons from criminals); Pabón Escabí v. Axtmayer, 90 P.R. Dec. 20, 27 (P.R. 1964) (hotel's duty to protect guests from assaults). In Santiago-Colón v. Supermercados Grande, for example, the Puerto Rico Supreme Court held that commercial establishments have a special duty of care to police their premises and enforce reasonable security measures when the business knows, or has reason to know, that criminal acts that would endanger the safety of customers and visitors are occurring, or are about to occur. 166 P.R. Dec. 796, 814-15 (P.R. 2006). Commercial establishments, therefore, may be held liable for the damages stemming from their failure to provide adequate, reasonable security given the totality of the circumstances in each case. Id. at 812-813.

Here, there is no dispute that Casa Cuba is a nonprofit[7] membership-based beachside social club. (Docket Nos. 49-1 at 1 ¶¶

[7] The fact that Casa Cuba is organized under the laws of Puerto Rico as a nonprofit does not impact that it functions as a commercial establishment. *See*

1, 3; 49-3 at 3; 57 at 5 ¶¶ 1, 3; 58 at 1-2, 8 ¶¶ 1, 3, 9). It is also uncontested that part of Casa Cuba's operations take place on a public beach, as it provides beach chairs and umbrellas to its members; these chairs and umbrellas are placed on the Isla Verde beach, adjacent to the Casa Cuba property. (Docket Nos. 49 at 3-4 ¶¶ 4-6; 49-1 at 1-2 ¶¶ 4-6; 57 at 6-7 ¶ 4-6; 58 at 2 ¶¶ 4-6). Hence, these services entail that employees interact to some degree with the non-member public who can be present at the beach that has general free access. (Docket No. 49-3 at 3). It is equally undisputed that the Proctor family did not request or receive any services from Casa Cuba while at the Isla Verde beach adjacent to its property. Specifically, they "neither rented beach equipment nor bought any food or drinks" and "never requested any services." (Docket Nos. 49 at 5 ¶ 16, 7 ¶ 32; 49-1 at 3 ¶ 16, 4 ¶ 32; 57 at 8 ¶ 16, 10 ¶ 32; 58 at 4 ¶ 16, 6 ¶ 32). Moreover, the record submitted by Plaintiffs, which includes deposition testimony from Nivia González Rodríguez ("Mrs. González"), Casa Cuba's Rule 30(b)(6) corporate representative and Treasurer of the Board of Directors, also shows that Casa Cuba houses a restaurant, as well

---

Márquez v. Casa de España de P.R., 59 F. Supp. 3d 409, 414 (D.P.R. 2014) (Gelpí, J.) (treating Casa de España, a center for civic and cultural activities that houses a restaurant and other facilities, as a commercial establishment); *cf.* N.H. Right to Life v. U.S. Dep't of Health & Hum. Servs., 778 F.3d 43, 50 (1st Cir. 2015) ("All sorts of non-profits—hospitals, colleges, and even the National Football League—engage in commerce as that term is ordinarily understood.").

as other facilities for sports-related activities. (Docket No. 57-2 at 6).

Following the doctrines applicable to situations involving criminal activity similar to those at bar, both in Puerto Rico and in most of the United States, the Court finds that to hold Casa Cuba liable for the criminal acts of Mr. Rosado, there must exist a breach of the duty to provide adequate and reasonable security. Montalbán, 132 P.R. Dec. at 801. Following such guidance, and the record before it, the Court analyzes Plaintiffs' negligence claims as to security under the commercial establishment standard.[8]

Viewing the record in the light most favorable to Plaintiffs, the Court finds that a reasonable trier of fact could conclude that Casa Cuba owes them a duty of care as a commercial establishment that provides services on the beach.[9]

---

[8] *See* Márquez, 59 F. Supp. 3d at 414. Márquez, of course, does not resolve whether a social club owes noncustomers on an adjacent public beach a duty to protect them from criminal assault.

[9] The Court notes that the First Circuit recently considered a case involving facts and legal issues that, although distinguishable, have some similarities to those presented here. In Wilson v. Iguana Sport Services, Corp., two hotel guests drowned after entering the ocean fronting a hotel in Puerto Rico. 182 F.4th 43, 47 (1st Cir. 2026). The hotel had contracted an independent company, Iguana Sport Services Corp. ("Iguana"), to provide beach equipment and to support beach-area operations, since Iguana held certain local permits for use of the maritime-terrestrial zone. Id. at 48-49. Family members of the deceased sued Iguana, alleging failure to warn guests, provide safety measures, and satisfy Puerto Rico's heightened duty of care for hotels and innkeepers. Id. at 49. The district court granted summary judgment, holding that Iguana owed no duty under the contract, the permit, or Puerto Rico law. Id. at 50. After de novo review, the First Circuit identified unresolved state-law questions concerning whether Iguana could be treated as an innkeeper or otherwise subject to a heightened duty and decided to certify those dispositive questions to the Puerto Rico Supreme Court. Id. at 48. Wilson does not control this case which

b. Casa Cuba's Breach of Duty of Care

The Court next addresses the second element of this negligence claim, the issue of whether Casa Cuba breached its duty of care by failing to adequately provide and enforce security measures inside and outside of Casa Cuba. As to these matters, various issues are disputed. First, Casa Cuba argues that it was not foreseeable that Mr. Rosado would act as he did. Second, the parties dispute whether the events alleged in the *Amended Complaint* took place in an area under the control of Casa Cuba. On one side, Casa Cuba posits that the aggression and shooting events happened at the public beach and, to this end, emphasizes that members can place their beach chairs anywhere on the beach. (Docket Nos. 49 at 4 ¶¶ 5, 10; 49-1 at 2 ¶¶ 5, 10; 57 at 6-7 ¶¶ 5, 10; 58 at 2-3 ¶¶ 5, 10). On the other side, Plaintiffs argue that those events happened on the public beach, but in an area functionally under the control of Casa Cuba precisely because of the location of its beach chairs. (Docket Nos. 49 at 4 ¶¶ 5, 12; 49-1 at 2 ¶¶ 5, 12; 57 at 6 ¶ 5, 7 ¶ 12; 58 at 2 ¶ 5, 3 ¶ 12). In addition, the record does not establish where Mr. Rosado obtained the firearm. Casa Cuba controverts Plaintiffs' further assertions

differs because, as this Court has found, Casa Cuba is a regular commercial establishment, the July 1, 2023 events extended into the Casa Cuba building, and no evidence on the record establishes that Casa Cuba can be considered either a hotel or an innkeeper. Nor does the Court's resolution of this *Motion for Summary Judgment* depend on the answers to the questions certified in Wilson.

that Mr. Rosado obtained the gun, and exited, from inside Casa Cuba, noting that Mr. Proctor did not see when or where Mr. Rosado got the bag and that Mrs. White first saw the backpack after the shooting. (Docket No. 69-1 at 1-3).

However, the undisputed evidence does establish that Mr. Rosado entered the premises of Casa Cuba and was followed by Mr. Proctor, along with other family members. (Docket Nos. 49 at 6 ¶ 27; 49-1 at 6 ¶ 27; 57 at 8 ¶ 19, 9 ¶ 27; 58 at 4 ¶ 19, 5-6 ¶ 27). During the pursuit and while inside the Casa Cuba building, the uncontested facts show that Mr. Rosado threw a chair at Mr. Proctor. (Docket Nos. 49 at 6 ¶ 27; 49-1 at 6 ¶ 27; 57 at 8 ¶ 19, 9 ¶ 27; 58 at 4 ¶ 19, 5-6 ¶ 27).

In addition, in opposition to the *Motion for Summary Judgment*, Plaintiffs point to the sworn statements provided by the two security personnel who were working at Casa Cuba on the date of the events, and who purportedly had knowledge of an altercation involving Mr. Rosado and Mr. Proctor inside the property of Casa Cuba. *See* (Docket Nos. 49-3 at 5; 49-9 at 3-4, 7-8; 57 at 12 ¶ 19; 58 at 9 ¶ 24).[10] Moreover, Plaintiffs present deposition testimony from the Proctors and from Mrs. González to argue that no security personnel intervened or confronted Mr. Proctor before he was assaulted at the beach and that security measures had been

---

[10] Plaintiffs also point to the sworn statement provided by a Casa Cuba employee about the encounter. (Docket No. 58 at 9 ¶ 21).

inexistent or inadequate. *See generally* (Docket Nos. 49-5; 49-6; 49-7; 49-8; 49-10). Although the security guards' affidavits are hearsay, the Plaintiffs could call them, as well as present Mrs. González's deposition, at trial to support their claim.[11]

Thus, the Court finds that in compliance with Rule 56, Plaintiffs have produced sufficient evidence to establish that there are genuine issues of material fact and to support bringing their negligence claim before the jury.

3. Matters Reserved for the Jury

Several questions on this claim are reserved for the trier of fact.

i. Issues of Material Fact

At this summary judgment stage, Casa Cuba has not shown the absence of a genuine dispute of material fact as to this claim. On

[11] The First Circuit has recently refrained from ruling on whether Rule 56 requires parties to cite materials that would be admissible at trial and noted that the Eleventh Circuit has allowed district courts to consider hearsay evidence on motion for summary judgment. Joseph v. Lincare, Inc., 989 F.3d 147, 155, 155 n.4 (1st Cir. 2021) (*citing* Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012)). District courts both in and out of the First Circuit have weighed on the issue. BRT Mgmt., LLC v. Malden Storage, LLC, No. CV 17-10005-FDS, 2023 WL 8719961, at *8 (D. Mass. Dec. 18, 2023) ("To the extent the affidavits themselves contain hearsay . . . the question is more challenging. Normally, the operative question is whether such evidence could be presented in a form that would be admissible at trial (or, more relevant here, an evidentiary hearing), not whether the evidence has been reduced to its final form at this stage."); Little v. New Prime, Inc., No. 4:19-CV-15-TCB, 2021 WL 5034374, at *2 n.1 (N.D. Ga. June 21, 2021) ("Whether inadmissible evidence may be considered on summary judgment is the subject of considerable debate among circuit courts. . . . [T]he Court considers it here.") In this case, Casa Cuba listed Mr. Rivera, Mr. Álvarez, and Mrs. Rosario as potential witnesses. (Docket No. 49-3 at 7-8). The Court finds that the content of this evidence could be offered in admissible form at trial and, therefore, can lightly remark on the evidence now.

the contrary, as has been previously discussed, Plaintiffs have pointed to parts of the record before this Court that raise many questions of material fact.

Thus, given the competing evidence and the genuine issues of material fact, the questions regarding Casa Cuba's alleged failure to provide and ensure security measures must be left for a jury to decide.

ii. Foreseeability

In addition, both parties dispute matters of foreseeability. This too counsels the Court to avoid reaching a decision at summary judgment.

The First Circuit has made it clear that issues of foreseeability are generally left for the jury. Marshall v. Perez Arzuaga, 828 F.2d 845, 848-49 (1st Cir. 1987). This is so because the "evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions" that may entail "reasonable differences of opinion." Id. at 849 (citation modified). Considering that "in negligence cases, determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury, a court should be cautious in using the summary judgment device to dispose of such cases." Situ v. O'Neill, 124 F. Supp. 3d 34, 47 (D.P.R. 2015) (citation modified).

In this case, foreseeability is another stumbling block that precludes summary judgment, given the disputed facts and other relevant information that is devoid from the record.

iii. Credibility Determinations

As previously highlighted, the record evidence in this case consists mainly of deposition testimony, affidavits provided as part of the murder investigation, and statements under penalty of perjury, some of which raise material conflicts. *See* (Docket Nos. 49-5; 49-6; 49-7; 49-8; 49-9; 49-10; 49-11). This is another hurdle the Court faces. As the First Circuit has stated, "[t]he precincts patrolled by Rule 56 admit of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record." Greenburg v. P.R. Mar. Ship. Auth., 835 F.2d 932, 936 (1st Cir. 1987).

Having examined the evidence, in the light most favorable to the nonmoving party, the Court finds that a reasonable jury could, upon weighing the evidence and making foreseeability and credibility determinations, decide questions in favor of either party as to the negligence claims for failure to provide adequate security measures. Since the Court is not authorized to assess

credibility, foreseeability, or gauge the weight of this evidence, summary judgment is thus precluded.

## V. CONCLUSION

For the reasons detailed above, Casa Cuba's *Motion for Summary Judgment* is **GRANTED IN PART AND DENIED IN PART** as follows: negligence claims regarding negligent hiring, training, and supervision are **DISMISSED WITH PREJUDICE;** and negligence claims regarding inadequate security measures shall **PROCEED.**

The Court will promptly set a pretrial/settlement conference.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 30, 2026.

/s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE